THOMAS P. FOX, Commissioner Office of Commissioner of Insurance
You request my opinion concerning a question that has arisen over hospital and medical coverage for persons insured under individual and group policies. Specifically, you ask whether health maintenance organizations (hereinafter "HMOs") which contract with the Department of Health and Social Services (hereinafter "DH SS") to provide coverage to medical assistance recipients are *Page 150 
required to offer continuation of benefits to those whose eligibility for medical assistance terminates pursuant to section632.897 (1), Stats.
You also ask a subsidiary question which is relevant only if the answer to the first question is in the affirmative. Your second question is whether the Office of the Commissioner of Insurance (hereinafter "OCI") may exempt an HMO from section632.897, under section 628.36 (2m)(b) and (3), when the HMO contracts with DH SS to provide coverage to medical assistance recipients.
The genesis of your question appears to be DH SS's decision to contract with HMOs to provide medical assistance to Medicaid recipients. In February 1982, in response to legislative mandates to increase enrollment of Medicaid recipients in HMOs, DH SS requested and received from the Federal Department of Health and Human Services a waiver of those federal regulations which permit Medicaid recipients to go to any health care provider. In July 1983. DH SS released "proposal specifications" soliciting proposals from HMOs in Dane County and Milwaukee County for the purpose of providing health care services to Medicaid recipients on a prepaid basis. Contracts were signed in May and June 1984 with thirteen of the fourteen bidders. Enrollment of Medicaid eligibles in HMOs in Dane County began on July 1, 1984, and in Milwaukee County on September 1, 1984. Enrollment in Milwaukee was on a voluntary basis from September 1 through December 1, 1984. Beginning January 1, 1985, eligible recipients were required to enroll in one of the eight available HMOs in Milwaukee. The contract between DH SS and the respective HMOs is labeled a "Contract for Services Between DH SS and [an HMO]" (hereinafter the "Contract"). The prefatory contract language is as follows:
 The Department of Health and Social Services and [an HMO], an insurer with a certificate of authority to do business in Wisconsin, and an organization which makes available to enrolled participants, in consideration of periodic fixed payments, comprehensive health care services provided by providers selected by the organization and who are employes or partners of the organization or who have entered into a referral or contractual arrangement with the organization, for the purpose of providing and paying for Medical Assistance contract services to recipients enrolled in the HMO under the State Medical Assistance Plan approved by the Secretary of the United States Department *Page 151 
of Health and Human Services pursuant to the provisions of the Social Security Act, do herewith agree: . . . .
Section 632.897 mandates that any group insurance policy must contain certain continuation and conversion benefits for the insureds and some of the insureds' dependents. Your first question is essentially a question of statutory interpretation of the scope of section 632.897 (1)(b) and (c). The relevant statutory language is as follows:
 632.897. HOSPITAL AND MEDICAL COVERAGE FOR PERSONS INSURED UNDER INDIVIDUAL AND GROUP POLICIES.
. . . .
 (b) "Employer" means the policyholder in the case of a group policy as defined in par. (c)1 and the sponsor in the case of a group policy is defined in par. (c)2 or 3.
(c) "Group policy" means:
 1. An insurance policy issued by an insurer to a policyholder on behalf of a group whose members thereby receive hospital or medical coverage on either an expense incurred or service basis, other than for specified diseases or for accidental injuries;
 2. An uninsured plan or program whereby a health maintenance organization, labor union, religious community or other sponsor contracts to provide hospital or medical coverage to members of a group on either an expense incurred or service basis, other than for specified diseases or for accidental injuries; or
 3. A plan or program whereby a sponsor arranges for the mass marketing of franchise insurance to members of a group related to one another through their relationship with the sponsor.
It appears that DH SS is an "employer" within the terms of section 632.897 (1)(b). "Policyholder" is defined in section600.03 (37) as "the person who controls the policy by ownership, payment of premiums or otherwise. See also `insured'." See also
definition of "control," section 600.03 (13). The term insured is defined in section 600.03 (26) as follows: *Page 152 
 "Insured" means any person to whom or for whose benefit an insurer makes a promise in an insurance policy. The term includes policyholders, subscribers, members and beneficiaries. This definition applies only to chs. 600 to 646 and does not apply to the use of the word in insurance policies.
Although there may be very strong policy reasons for permitting DH SS to proceed with its plan without requiring compliance with section 632.897, the DH SS program and Contracts appear to fall unambiguously within the terms of section 632.897. Consequently, because there is no facial ambiguity of the statutory language, there is no need to analyze the legislative intent or legislative history associated with section 632.897. In short, although the Legislature may not have considered the impact of section 632.897
on programs such as the one at issue, the language in section632.897 unambiguously covers this fact situation
Although the contract between DH SS and the HMOs uses terms such as "enrollee" and "participant" instead of "insured" or "policyholder," it is clear that DH SS "controls the policy[ies] by ownership, payment of premiums or otherwise." Sec. 600.03 (37) and (13), Stats. Also, the contract for services between DH SS and the HMOs are group policies within the terms of section632.897 (1)(c)1. in that they are "[a]n insurance policy issued by an insurer to a policyholder on behalf of a group whose members thereby receive hospital or medical coverage on . . . [a] service basis . . . ." The Contract is an "insurance policy issued by an insurer" pursuant to the definitions provided in section 600.03 and 632.897 (1)(d). For example, the Contract clearly deals with insurance in that it is included within the definition: "Risk distributing arrangements providing for compensation of damages or loss through the provision of services or benefits in kind rather than indemnity in money." Sec. 600.03
(25)(a)1, Stats. The Contract is a "policy" in that it is a "document . . . used to prescribe in writing the terms of an insurance contract . . . ." Sec. 600.03 (35) (definition of "policy"). Stats. "Insurer" is defined as "any person or association of persons doing an insurance business as a principal, and includes fraternals, issuers of gift annuities, cooperative associations organized under s. 185.981 and insurers operating under subch. I of ch. 616. It also includes any person purporting or intending to do an insurance business as a principal on his or her own account." Sec. 600.03 (27), Stats.See also sec. 632.897 (1)(d), Stats. The HMOs *Page 153 
involved here clearly fall within the definition of "insurer" given their agreement to provide comprehensive health care services in consideration of periodic fixed payments. Moreover, the conclusion that the Contracts involved here are "group policies" pursuant to section 632.897 (1)(c) is consistent with the definition of "group insurance policy" contained in section600.03 (23).
Similarly, section 632.897 (1)(b) and (c)2 provides an alternative rationale for finding that DH SS is an "employer" and thereby subject to the continuation and conversion requirements contained therein. That is, pursuant to section 632.897 (1)(b), DH SS is a sponsor of a group policy as defined in section632.897 (1)(c)2. The Contract could be viewed in this instance as an uninsured plan or program whereby an HMO contracts to provide hospital or medical coverage to members of a group on an expense incurred or service basis. See sec. 632.897 (1)(c)2. Stats
With regard to the second question posed in your letter, it does appear that OCI may, pursuant to section 628.36 (2m)(b) and (3), exempt an HMO from section 632.897. even when the HMO contracts with DH SS provide coverage to medical assistance recipients. Subsection (3) provides as follows.
 EXEMPTION BY RULE. By rule the commissioner may exempt from the application of any part of subs. (1) to (2m) [including the requirement that plans comply with chapters 600 to 646 as set forth in section 628.36 (2m) (b), including 632.897] plans which provide innovative approaches to the delivery of health care or which are designed to contain health care costs, and which cannot operate successfully consistent with all of the provisions in subs. (1) to (2m). The commissioner may promulgate such a rule only if on a finding that the interests of the public requires such plans as an experiment, to supply health care services that are not otherwise available in adequate quantity or quality or to contain health care costs. The promulgated rule shall be as narrow as is compatible with the success of the plan.
I am unable at this time to render an opinion as to whether the criteria as set forth in this subsection have been met in this case. It certainly appears that the use of HMOs by DH SS is designed to contain health care costs. However, I have been provided with no factual record by your office or by DH SS which would permit me *Page 154 
to render an opinion as to whether the DH SS program "cannot operate successfully consistent" with the requirements in the insurance laws, most particularly the requirement contained in section 632.897. Finally, the requirement that whatever rule is adopted by OCI be as "narrow as is compatible with the success of the plans" suggests that it would be very difficult to render an opinion as to whether a particular rule comports with OCl's exemption authority absent a review of the actual language of the proposed rule.
BCL:KJO